WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE
This is an action that arises under a health care plan governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). As contemplated by the Magistrate Judge's Order of March 3, 2017, the parties have filed Cross-Motions for Summary Judgment. (Doc. Nos. 23 & 25.) Trane has filed a Response. (Doc. No. 26.) The motions are ready for decision. For the following reasons, Trane's motion will be granted and Neblett's motion will be denied.
I. Agreed Facts
The parties have filed agreed stipulations of fact for purposes of the cross-motions for summary judgment.[1] (Doc. No. 21.) They are as follows.
On or about November 14, 2012, Neblett was injured while cutting trees. The safety *850 lanyard that Neblett was wearing broke and allowed him to fall. He sustained injuries in the fall.
Neblett was a participant and beneficiary of a self-funded employee welfare benefit plan sponsored by Trane. At all times relevant to this action, the Trane Employee Welfare Benefit Plan (the "Plan") was an employee welfare benefit plan as defined by ERISA. The Plan was established and maintained by Trane for the purpose of providing its employees and retirees certain medical benefits. The Plan was administered by Horizon Blue Cross/Blue Shield of New Jersey ("Horizon BCBS"). Xerox Recovery Services ("Xerox") was the authorized agent for representing Horizon BCBS in collection of the subrogation/reimbursement amounts from the payment of medical expenses for Neblett.
The Plan excludes coverage for medical expenses incurred as a result of injuries that are the result of the actions of a third party that is or may be liable for all or part of such medical expenses. By the terms of the Plan, if it provides benefits under circumstances where a third party is or may be liable for such expenses, the Plan is granted subrogation and reimbursement rights and an equitable lien against any funds a participant recovers from the third party. The Plan paid $148,240.00 in medical expenses incurred by Neblett as a result of his accident.
Neblett and his spouse brought a separate lawsuit in this Court, alleging that the lanyard Neblett was wearing was defective or unreasonably dangerous. Medical expenses of approximately $300,000.00 were an item of damages claimed in that lawsuit. That case was mediated on May 3, 2016. Following the mediation, the Nebletts' claim was settled for an amount in excess of the amount in dispute in this case. The settlement by the Nebletts was a settlement of any and all claims and one in which they gave a complete release of all claims.
Neblett's counsel sent correspondence to Horizon BCBS on April 13, 2016, and requested a claims listing, from November 14, 2012 to present, setting forth claims paid on Neblett's behalf related to his fall. On April 19, 2016, Xerox, on behalf of Horizon BCBS, sent correspondence to Spicer Rudstrom, PLLC, Neil Sambursky, Esq., and Neblett's counsel, and advised that the Plan that paid for Neblett's treatment was a self-funded employee welfare benefit plan under ERISA with subrogation and/or reimbursement rights. On April 21, 2016, Neblett's counsel sent correspondence to Xerox and expressed frustration at being unable to get information from Xerox regarding any subrogation/reimbursement interest for purposes of settling Neblett's separate products liability injury claim. On April 25, 2016, Neblett's counsel again wrote Xerox, acknowledged the notice of lien, and requested an itemization of the claimed lien amount. Xerox replied with an itemization of the amounts paid by the Plan for medical expenses incurred in Neblett's treatment.[2] On April 27, 2016, Neblett's counsel sent correspondence to Xerox acknowledging the itemization of the subrogation/reimbursement claim and asking that the lien amount be reduced.[3]
On April 29, 2016, James D. Kay, Jr., Esq., the mediator of Neblett's products liability case, wrote to Xerox. Kay advised that mediation of the case had been difficult, and he requested that the amount of $75,000.00 be accepted for the subrogation/reimbursement *851 claim. On May 3, 2016, Neblett's counsel sent correspondence to Xerox, asserted that some of the medical claims ($3,795.00) were not related to Neblett's accident, requested that those be removed to lower the claim to $148,240.00, and asked that a settlement of the claim be accepted in the amount of $115,642.02 (21.99% less).
In a letter dated May 3, 2016, Brianne Santiago of Horizon BCBS wrote to Neblett's counsel and stated that Horizon BCBS would not be filing a lien for Mr. Neblett's medical expenses. Neblett had settled his product liability claims prior to receipt of this letter. The letter stated that "[i]f the member is part of a self-insured group or government plan, you will need to contact the group directly to determine whether the group will be filing a lien." (Doc. No. 21-10 at 2.) Neblett's counsel did not contact his self-funded group after receipt of Santiago's May 3 letter.
On May 5, 2016, Neblett's counsel wrote to Xerox stating that he understood Xerox had denied his request to reduce the lien amount of $148,200.00 and that the refusal to reduce the lien amount was disputed. In a letter written the dame day, Xerox advised Neblett's counsel that the subrogation/reimbursement claim was $148,240.00 and sent an itemization of the claim.
In a letter dated May 18, 2016, and sent via fax on May 23, 2016, Neblett's counsel wrote Xerox, attached a copy of the Horizon BCBS letter of May 3, 2016 (which stated that no subrogation/reimbursement claim was going to be made), and advised that he considered the subrogation/reimbursement claim concluded.
The next day, May 24, 2016, Ms. Santiago of Horizon BCBS called Neblett's counsel and advised him that Horizon BCBS would indeed be asserting a subrogation/reimbursement claim. On that same day, Santiago sent correspondence stating that the May 3 letter that indicated that no subrogation/reimbursement claim would be made was sent erroneously and that Horizon BCBS would still be making its subrogation/reimbursement claim through Xerox.
II. Legal Standard
In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). After the movant has satisfied this initial burden, the nonmoving party has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)."A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."
*852 Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49, 106 S.Ct. 2505 ).
III. Analysis
This case is relatively straightforward. Neblett was badly injured; the Plan, which is governed by ERISA, paid his medical bills; Neblett recovered an amount in excess of the medical bills in litigation with a third party; and Trane seeks reimbursement from Neblett for $148,240.00 as a result. Trane's initial right to recover in these (common) circumstances is not disputed; rather, Neblett contends that Trane's cannot recover because it disclaimed its interest in the subrogration lien. More specifically, it appears that Neblett contends that the May 3, 2016 correspondence from Horizon BCBS to Neblett's counsel-stating that Horizon BCBS would not be filing a lien for Neblett's medical expenses-waived or estopped Trane's right to reimbursement.[4] Trane maintains that these defenses are either unavailable or inapplicable here.
While ERISA preempts state law claims of waiver and estoppel, 29 U.S.C. § 1144(a), the ERISA statute itself does not specifically address whether the theories of waiver and estoppel under federal common law apply to actions brought under the statute. Otero v. Unum Life Ins. Co. of Am., 226 F.Supp.3d 1242, 1271 (N.D. Ala. 2017). "However, [ERISA] has interstices, and the Supreme Court has noted that Congress expected, in passing the statute, for the federal courts to fill those gaps with 'a federal common law of rights and obligations under ERISA-regulated plans.' " Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ). In other words, as the Sixth Circuit has broadly stated, where ERISA is silent on a matter, federal courts look to federal common law to "fill the statutory gap."[5] Patterson v. Chrysler Group, LLC, 845 F.3d 756, 762 (6th Cir. 2017).
A. Waiver
"It is not clear [ ] that [Neblett] can invoke waiver under the federal common law of ERISA." Van Loo v. Cajun Operating Co., No. 14-cv-10604, 2015 WL 7889034, at *10 (E.D. Mich. Dec. 4, 2015). The Sixth Circuit has not ruled on the issue and several of the other Circuits are split as to whether, and in what circumstances, a claim of waiver may be viable. Compare Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 647-49 (7th Cir. 1993)abrogated on other grounds by Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999) (waiver may be viable claim); Witt v. Metro. Life Ins. Co., 772 F.3d 1269, 1279 (11th Cir. 2014) (same), Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991) (same); Glass, 33 F.3d at 1348 (11th Circuit has "left open" the question); with White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997) (stating that federal common law under ERISA does not incorporate the principles of waiver and estoppel). Despite this uncertainty, the Court will address Neblett's waiver argument out of an abundance of caution. See Thornton v. W. & S. Fin. Grp. Beneflex Plan, 797 F.Supp.2d 796, 806 (W.D. Ky. 2011).
*853 "Waiver is the voluntary and intentional relinquishment or abandonment of a known existing right or privilege which, except for such waiver, would have been enjoyed." Thomason, 9 F.3d at 647 ; Agee v. Jennie Stuart Med. Ctr., No. 5:05-CV-154-R, 2007 WL 923090, *5 (W.D. Ky. Mar. 23, 2007). "Both the Seventh Circuit and the Eleventh Circuit Court of Appeals concluded that if the common law of ERISA encompasses waiver claims, it is not a 'something-for-nothing kind of waiver whereby [a party] will be held to the terms of its misleading representations for no other reason than that it made them." Agee, 2007 WL 923090 at *5 (citing Thomason, 9 F.3d at 649 ); see also Glass, 33 F.3d at 1348. Thus, the party asserting waiver must demonstrate that the other party intentionally relinquished its known rights, and in doing so caused a detriment to the opposite party or a benefit to itself. Van Loo, 2015 WL 7889034, at *10 ; Thornton, 797 F.Supp.2d at 807 ; Agee, 2007 WL 923090 at *5.
Given these parameters, Neblett cannot establish waiver here. Even assuming that agency principles could overcome the hurdle of Trane having "knowingly" acted through the activity of Horizon BCBS, it is clear to the Court from the stipulated facts that the May 3, 2016 letter cannot be considered by a reasonable jury to be a "voluntary" or "intentional" action. Rather, all of the facts establish that it was a mistake. The parties had exchanged correspondence amongst themselves for several months regarding the subrogation lien amount and proposed modifications thereto. Trane (through its agents) refused to compromise its reimbursement claim to the level requested by mediator Kay, but it did reduce the claim when Neblett's counsel pointed out some clarifications. Critically, on May 24, one day after Horizon BCBS became aware of the mistake and of Neblett's counsel's assertion that the matter was closed, Santiago explicitly clarified to Neblett that the May 3 letter stating no subrogation/reimbursement claim would be made was sent erroneously. Aside from the May 3 form letter, there is no evidence in the stipulated facts that Trane ever intended to reduce its claim below $148,240.00. In short, Neblett has not established a waiver that was voluntary or intentional.
In addition, and perhaps even more importantly, even if this Court were to find a knowing and voluntary/intentional waiver, Neblett's claim would still fail because of the nature of the waiver. This would be a precise example of the "something-for-nothing" kind of waiver which the few courts that have entertained the possibility of waiver in the ERISA context have expressly disclaimed. Here, Neblett could not establish that Trane (via Horizon BCBS) did anything other than relinquish its own subrogation rights; Neblett has no evidence that Trane garnered any benefit for itself. To the contrary, Trane's purported waiver operated only to its own detriment and it still seeks reimbursement. Indeed, the facts suggest that Neblett merely seeks to take advantage of a lucky paperwork error. Trane received no consideration for its purported waiver and, because Neblett settled his products liability action prior to the purported waiver, Neblett did not act to his detriment in reliance upon it. See, e.g., Glass, 33 F.3d at 1348 (rejecting waiver argument where the summary judgment record contained "no evidence that [the insurance company] attempted to unjustly enrich itself"); Witt, 772 F.3d at 1279 (rejecting waiver argument where the plaintiff wanted the defendant to relinquish the benefit of the statute of limitations but had not given anything in return and noting that a waiver would not be found in a "something-for-nothing" situation where the defendant made a misrepresentation but did not attempt to receive an unjust benefit); Thornton, 797 F.Supp.2d at 808 ("Thornton offers only *854 these employees' bare misrepresentations to establish waiver. Thornton offered no evidence that the waiving party has received consideration for the waiver or that the non-waiving party has acted in reasonable reliance on the apparent waiver.") (internal quotation marks omitted). Neblett offers no governing precedent to support his requested one-sided, windfall result.[6]
Accordingly, the Court finds waiver inapplicable in these circumstances.
B. Estoppel
The Sixth Circuit has recognized that "equitable estoppel may be a viable theory in ERISA cases." Sprague v. Gen. Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998) ; Thornton, 797 F.Supp.2d at 806 ; Agee, 2007 WL 923090, at *5. The elements of an equitable estoppel claim are: "(1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment." Sprague, 133 F.3d at 403 (citing Armistead v. Vernitron Corp., 944 F.2d 1287, 1298 (6th Cir. 1991) ). However, "[p]rinciples of estoppel ... cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." Sprague, 133 F.3d at 404 ; see also Donati v. Ford Motor Co., 821 F.3d 667, 674-75 (6th Cir. 2016) (citing Sprague and holding same). The Sixth Circuit has carved out a narrow exception to the Sprague rule for cases where the plaintiff can show "(1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel," in addition to "the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud." Donati, 821 F.3d at 676 (citing Bloemker v. Laborers' Local 265 Pension Fund, 605 F.3d 436, 444 (6th Cir. 2010) ).
Here, the parties have stipulated to the lack of ambiguity-namely that (1) the Plan excludes coverage for medical expenses incurred as the result of actions of a third party when that third party may be liable for those medical expenses (Stipulation No. 9) and (2) the Plan provides that if it pays medical expenses incurred as a result of the actions of a third party when that third party may be liable for those expenses, the Plan is given reimbursement and subrogation rights and an equitable lien against any funds received from the third party (Stipulation No. 10). Moreover, Neblett has raised no argument as to ambiguity in his motion. As such, estoppel does not apply under the Sprague rule, because, as relevant here, the Plan is not ambiguous.
Nor does the narrow exception to the Sprague rule apply. First, this is not a case involving "calculation of benefits." See, e.g., Donati, 821 F.3d at 675 (considering *855 exception where employee was originally notified retirement cash-out was $230,361.49 but was then told it was actually $38,840.34); Bloemker, 605 F.3d at 444 (considering exception where retirement plan had miscalculated monthly benefit upon which retiree based retirement decision by more than five hundred dollars per month). Second, there is a missing "traditional element of estoppel," as set forth in Sprague, because, on the undisputed facts, there was no reliance upon the May 3 letter to Neblett's detriment as Neblett had already settled his separate products liability case prior to its receipt (Stipulation No. 15).[7]
Accordingly, the facts of this case do not support the application of equitable estoppel.
IV. Conclusion
Neblett has not established that he is entitled to summary judgment on the ground of waiver or equitable estoppel. Given that there are no disputes of material fact, the Court finds that, on the basis of persuasive authority, Trane has established that it is entitled to summary judgment. Because Neblett has not avoided that, under the Plan, there is an unambiguous requirement to repay the benefits paid on Neblett's behalf, Trane is entitled to a judgment in the amount of $148,240.
Accordingly, Trane's Motion for Summary Judgment (Doc. No. 23) will be GRANTED and Neblett's Motion for Summary Judgment (Doc. No. 25) will be DENIED . Judgment will be entered in favor of Trane and against Neblett in the amount of $148,240.
An appropriate Order will enter.

While the parties have stipulated these facts as "true" for the purposes of summary judgment, they have not stipulated "to the relevancy or materiality of any item stipulated." (Doc. No. 21 at 1.) The Court, however, finds all of these facts relevant and material, and therefore concludes that the stipulations form the universe of undisputed material facts for the purposes of summary judgment under the Federal Rules of Civil Procedure and the Local Rules. See Fed. R. Civ. P. 56 ; L.R. 56.01. Neither party has attempted to introduce any additional material facts.

This itemization totaled $152,035.60. (Doc. No. 21-5 at 5.)

Also on April 27, 2016, Xerox asked Neblett's counsel for information regarding the submission of any medical claims to an insurance carrier.

The argument section of Neblett's brief is one paragraph long and contains no citation to precedent. (Doc. No. 25 at 7-8.) However, out of an abundance of caution, the Court will assume that Neblett is making both waiver and estoppel arguments.

The common law constructed by courts must effectuate the policies underlying ERISA. Black v. TIC Inv. Corp., 900 F.2d 112, 114 (7th Cir. 1990).

Neblett suggests that a ruling for Trane in this case would be a "hardship" for Neblett. Clearly, however, Neblett should have been aware all along that he might need to reimburse Trane for the subrogation amount long at issue and litigated here. The Court cannot control circumstances that may have led Neblett to choose to not segregate funds in the disputed amount when he received the settlement in his products liability action.

Neblett has not argued any other type of reliance in his brief.