NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0445n.06

No. 18-6314

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENNETH H. MILLER, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Aug 22, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| RETIREMENT PROGRAM PLAN FOR EMPLOYEES OF CONSOLIDATED NUCLEAR SECURITY, LLC, at the U.S. Department of Energy Facilities at Oak Ridge, Tennessee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before: McKEAGUE, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. Complexity is not the same thing as contradiction. Here, a retirement plan specified two different meanings for the term "Credited Service": one meaning applied for the purpose of calculating the amount of an employee's pension; the other applied to determine whether the employee had a "vested" right to benefits. To avoid a putative contradiction, the district court applied the latter meaning for the former purpose. We respectfully disagree with that decision, and reverse.

The Retirement Program Plan for Employees of Consolidated Nuclear Security, LLC (the Retirement Program) manages a retirement plan for employees at the Y-12 National Security Complex in Oakridge, Tennessee. The plan provides a pension which increases by some amount for "each year" of an employee's "Credited Service" at the complex. But the plan states that

employees have no vested right to the pension (and other benefits) unless an employee accumulates "at least five years of Credited Service" at the complex. Anything less, and the employee "shall receive no Retirement Benefits."

To participate in the plan, an employee must work directly for one of the companies that have adopted the plan (or for an affiliate of such a company). Employees who work for subcontractors—whom the plan calls "leased employees"—are ineligible for the plan and generally do not accrue pension benefits for their work at the complex.

On November 21, 1992, Kenneth Miller began working as an electrical inspector at the complex. He worked for a subcontractor, so the Retirement Program deemed Miller a "leased employee" and therefore ineligible to participate in the plan. After 12 years as an employee of the subcontractor, however, Miller began working for a company that had adopted the plan—namely, Babcock & Wilcox Technical Services Y-12, LLC. He thus became eligible to participate in the plan on the first day of his new job: December 6, 2004.

Twelve years later, Miller noticed that the Retirement Program was calculating the amount of his pension as though his Credited Service began in 2004 (when he had started working for Babcock) rather than 1992 (when he had started working for the subcontractor). Miller asked the Retirement Program to calculate his pension with a Credited Service beginning in 1992. The Retirement Program's lawyer replied that, as relevant to the plan provisions that define the amount of his pension, Miller's Credited Service began in 2004. Miller objected, and eventually the Plan Administrator formally denied Miller's request.

Miller thereafter sued the Retirement Program under ERISA, 29 U.S.C. § 1132(a), claiming that the Retirement Program should have calculated the amount of his pension with a Credited Service beginning in 1992. Based upon the administrative record, the district court entered

judgment in favor of Miller. We review that decision de novo. *See Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667, 671 (6th Cir. 2016).

As an initial matter, the parties dispute whether we must review the Plan Administrator's denial de novo or deferentially. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). But that dispute is immaterial if the relevant plan terms are unambiguous, which is a question that we review de novo. *See Adams v. Anheuser-Busch Companies, Inc.*, 758 F.3d 743, 747 (6th Cir. 2014). So we turn to that question first.

At issue here is whether Miller's time as a leased employee counts as Credited Service as that term is used in the provisions that define the amount of his pension. The plan defines Credited Service as follows:

> "Credited Service" is service that is used for purposes of eligibility for Plan participation and vesting, and shall mean, for any Employee, such Employee's Company Service Credit. However, for purposes of determining whether a Participant has a vested right to the Participant's Accrued Benefit, in any case where it will produce a result more favorable to the Employee, an Employee's Credited Service shall be determined in accordance with the following provisions
> . . . .
>> (f) If a leased employee has performed services for the Employer on a substantially full-time basis for a period of at least 12 months and becomes an Employee, his service as a leased employee shall be counted as Credited Service for participation and vesting purposes.

[R. 15-5 at 464-65.]

That definition provides two meanings for Credited Service. The first meaning is stated as a general rule: the term "shall mean . . . such Employee's Company Service Credit[,]" which the plan elsewhere states is "the service used to determine *the amount of* a Participant's Accrued Benefit for benefit accrual purposes[.]" (Emphasis added.) And the parties agree that the term "Company Service Credit" itself describes only the period after an employee "first performs an Hour of Service for a *Participating Employer*[.]" (Emphasis added.) The general rule as set forth

in the definition, therefore, is that an employee's prior service as a leased employee does not count toward his Credited Service.

The second meaning applies "for purposes of determining whether a Participant has a vested right to the Participant's Accrued Benefit[.]" For those purposes, Credited Service "shall be determined in accordance with" other "provisions," one of which states that "service as a leased employee shall be counted as Credited Service for participation and vesting purposes." Under this second meaning, then, Credited Service includes an employee's time as a leased employee.

Thus, Miller's time as a leased employee counts as Credited Service for purposes of vesting, but not for the purpose of calculating the amount of his pension. Specifically, when Miller started work for Babcock, his 12 years as a leased employee met the vesting requirement that he have "at least five years of Credited Service[.]" And that meant he immediately had a vested right to any benefits that he might accrue going forward. But "the service that is used to determine *the amount of*" those benefits is limited to his Company Service Credit, which undisputedly did not include his time as a leased employee. (Emphasis added.) To the contrary, his Company Service Credit began on the date when Miller "first perform[ed] an Hour of Service for a Participating Employer[,]" which was December 6, 2004. Hence the Plan Administrator correctly denied Miller's claim.

Miller argues that the plan's drafters would not have used the term Credited Service in the provisions that define the amount of his pension if that term simply meant Company Service Credit. Yet the plan itself says that Credited Service generally "shall mean . . . Company Service Credit." Hence this argument turns out to be a complaint about the circuitous definition of Credited Service. Perhaps, as Miller suggests, the plan's language could have been shorter or simpler. But what matters here is clarity, not concision; and as shown above the relevant plan terms are clear.

Miller also says that the Retirement Program conceded that Miller's Credited Service begins in 1992 for all purposes. But the Retirement Program has conceded only that Miller's Credited Service began in 1992 for purposes of vesting.

Finally, Miller suggests that he was erroneously classified as a leased employee from 1992 to 2004. But he failed to develop that argument, so it is forfeited on appeal. *See United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006).

In sum, we are bound to enforce the plan's terms. Those terms unambiguously support the Administrator's decision. The district court's judgment is therefore reversed, and the case is remanded for proceedings consistent with this opinion.