RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0359p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DONNA JEAN ZIRBEL,

>*Plaintiff-Appellant*,

*v.*

FORD MOTOR COMPANY, as Sponsor and Plan
Administrator for the Ford Motor Company General
Retirement Plan,

>*Defendant-Appellee*.

No. 20-1149

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:18-cv-13212—Nancy G. Edmunds, District Judge.

Argued:  November 10, 2020

Decided and Filed:  November 16, 2020

Before:  SUTTON, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Katherine Wainright Shensky, WOOD KULL HERSCHFUS OBEE & KULL PC,
Farmington Hills, Michigan, for Appellant.  Karl G. Nelson, GIBSON, DUNN & CRUTCHER
LLP, Dallas, Texas, for Appellee.  **ON BRIEF:**  Katherine Wainright Shensky, WOOD KULL
HERSCHFUS OBEE & KULL PC, Farmington Hills, Michigan, for Appellant.  Karl G. Nelson,
GIBSON, DUNN & CRUTCHER LLP, Dallas, Texas, Julia Turner Baumhart, HARDY &
PELTON, P.L.C., Birmingham, Michigan, for Appellee.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge. Donna Zirbel received a $351,000 retirement-benefits payment from Ford Motor Company. But the payment was two sizes too big. When Ford learned of the mistake, it asked for the extra money back. Zirbel refused. She sued Ford, seeking a declaration that she could keep the money. Ford stood by its decision. The district court granted summary judgment to Ford, requiring Zirbel to return the $243,000 in overpayments. We affirm.

I.

Donna's former husband, Carl Zirbel, retired from Ford in 1998 and participated in Ford's retirement plan. The plan offers monthly pension payments. "In the event of an error" in calculating a pension, the plan requires a beneficiary to "return[]" the "amount of the overpayment" to the fund "without limitation." R.25-37 at 2. But the committee that runs the plan has "discretionary authority to reduce any repayment amount." *Id.*

When Carl and Donna divorced in 2009, the divorce decree said that Donna would receive half of the marital portion of Carl's pension, the portion attributable to his work during their marriage. Donna contacted Ford to discuss her pension benefits. After some back and forth, she agreed to postpone drawing down the pension. Then in 2013, she contacted Ford and it offered a lump sum payment. She accepted a large sum in place of her future monthly benefits and a $351,690 retroactive payment to make up for the postponed monthly benefits.

After the government took its share of the retroactive payment through withholding taxes, Zirbel deposited the rest into her bank account. She eventually placed some of the windfall in her Investment Retirement Account, she invested some in mutual funds, she gave some to her children, and she paid more taxes.

Four years later, Ford audited Zirbel's benefits. It discovered that the retroactive pension payment mistakenly included benefits going back to 1998, when Carl retired, instead of 2009, when the two divorced. Zirbel thus received an extra ten years' worth of monthly payments.

The $351,690 payment should have been just $108,500, meaning she received $243,190 more than she should have.

Ford asked for the money back. Zirbel appealed, first to the third-party actuarial service that operates Ford's plan, then to the committee that oversees the pension plan. Each appeal failed. The committee invited Zirbel to apply for a hardship reduction, which would require full disclosure of her finances, including her other substantial retirement funds, her other investments, and her inheritance from her mother. Zirbel did not apply.

Zirbel sued Ford, seeking a declaration that she was entitled to keep the money. Ford counterclaimed, seeking restitution of the overpayment. The district court granted summary judgment to Ford.

II.

*Decision of the plan committee*. The first question is whether the plan committee permissibly required Zirbel to return the excess pension payments. It did.

When a benefits plan gives the committee that oversees it discretionary authority, as this one does, a federal court has no license to second-guess a plan's benefits decision unless it was arbitrary and capricious. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). So long as the decision results from "a deliberate, principled reasoning process" and relies on evidence in doing so, that usually does the trick. *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

The committee's request for its money back was neither wrong nor arbitrary nor capricious. That's what the plan says. "In the event of an error that results in an overpayment of benefits to a Member," the plan says, "the amount of the overpayment shall be returned to the Retirement Fund, without limitation, except the Committee shall have discretionary authority to reduce any repayment amount from a Member." R.1-2 at 120. Because of an "error," Zirbel received an "overpayment of benefits" in the "amount of" $243,190. The plan's text calls for repayment. The initial request for repayment indeed was *required* ("shall") by the plan's fiduciary duty to the *other* beneficiaries of the plan. Yes, the plan permits Ford to reduce a

repayment or waive it altogether on hardship grounds.  But Zirbel never applied for a waiver.  And nothing requires Ford to provide a waiver on its own initiative.  Decisions that respect a plan's terms aren't arbitrary or capricious.  *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 286 (6th Cir. 2008).

Nor was there anything problematic about the process provided to Zirbel.  The plan gave her several opportunities to appeal the decision, and she took each one.  At the final stage, the committee reviewed the appeal record, examined Zirbel's exhibits, discussed the facts of the case, and denied the appeal.  The committee also gave her an opportunity to apply for a hardship waiver.  She opted not to make the application.  Nothing about this process sunk to the level of arbitrariness or (to the extent there's a difference) capriciousness.

Zirbel insists that we should review Ford's decision with fresh eyes because a third-party operator, not the Ford plan committee, made the initial decision.  *Cf. Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001).  But the committee made the final decision, and that suffices.  *Univ. Hosps. of Cleveland v. S. Lorain Merchants Ass'n Health & Welfare Benefit Plan & Tr.*, 441 F.3d 430, 434 (6th Cir. 2006).

Zirbel adds that the plan committee failed to discuss her expenditures when it decided whether to require repayment.  But the members reviewed the entire appeal package, saw her arguments and the evidence, and came to a decision.  A committee need not discuss aloud every point raised by a claimant to survive arbitrary-and-capricious review.  The "[r]eason for [a]ppeal" identified by Zirbel at any rate turned on Ford's alleged incompetence, R.25-31 at 2, not her spending of the money.  No less significantly, Ford invited Zirbel to apply for a financial hardship reduction, which would have permitted her attorney to press any "the money's gone" arguments.  But she did not file one because she "did not believe it would be a hardship" to return the money, just that she was "entitled" to it.  R.25-3 at 67.

*Remedy*.  That Ford may demand repayment in federal court does not answer every question in these types of cases.  Ford filed its counterclaim under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., which allows it "to obtain . . . appropriate equitable relief . . . to enforce any provisions of this [Act] or the terms of the plan."  29 U.S.C.

§ 1132(a)(3)(B).  That prompts this question:  Does the judgment directing Zirbel to pay Ford $243,190 in restitution provide "equitable relief" as opposed to legal relief?

The United States Reports tells us that § 1132(a)(3)(B) authorizes "restitution in equity," not "restitution at law."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002); *see Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 362–63 (2006).  A court awards equitable restitution when it imposes a lien on "particular funds or property in the defendant's possession" but legal restitution when it holds the defendant liable for a sum of money. *Knudson*, 534 U.S. at 214.

Sometimes a wrongful possessor will argue that she no longer possesses the "particular funds" to which a lien once attached, preventing recovery in equity.  The Supreme Court grappled with that problem in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016), which instructs us to follow the money.  One possibility:  The wrongful possessor spends the liened funds on "traceable items," say, a car or a house or an investment fund.  *Id.* at 144–45.  In that case, the lien attaches to the car or other item, preserving the plaintiff's ability to recover in equity.  Another possibility:  A party "complete[ly] dissipat[es]" a fund by spending it on nontraceable items, like food, and the lien dissolves.  *Id.* at 145.  The plaintiff can still recover from the defendant's general assets at law, just not in equity and just not under § 1132(a)(3)(B).  But a possessor does not dissipate a fund by depositing the cash into an account containing the possessor's other assets.  Any "commingling" of wrongfully possessed funds and rightfully possessed funds permits a lien on the commingled account.  *Id.* at 149.

Under these principles, and so far as Zirbel has argued this case, the remedy in this case amounts to equitable restitution.  The plan's reimbursement provision gave it a right to recover a particular fund: the overpayment.  *Hall v. Liberty Life Assur. Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010).  As soon as Zirbel received the overpayment, a lien attached, permitting the plan to seek equitable restitution in the amount of the $243,190.

Nothing from the receipt of those funds to the start of the lawsuit changed that calculation. Once she received the overpayment, she placed it into her accounts. This commingling gave Ford an equitable lien against those accounts up to the overpayment. Because Zirbel does not argue that she dissipated the funds in those accounts into nontraceable items, that's all we need to know. Ford could recover through this equitable lien.

Zirbel offers a two-front challenge to this conclusion. She mainly argues that the language of the plan authorizes a legal remedy rather than an equitable one because it uses the word "amount." But in *Gilchrest v. Unum Life Insurance Company of America*, 255 F. App'x 38 (6th Cir. 2007), a case upon which she relies, we recognized that similar plan language, language establishing the plan's "right to recover any overpayments" but no "more money than the amount we paid you," established an equitable lien. *Id.* at 45. Today's plan provision, requiring beneficiaries to "return" the "amount of the overpayment," does the same thing in all relevant respects. R.25-37 at 2. *Montanile* suggests the same conclusion. That plan provision created an equitable lien by requiring participants to reimburse the plan for "any amounts . . . recover[ed] from another party by award, judgment, settlement or otherwise." *Montanile*, 577 U.S. at 139 (quotation omitted). The term "amount," contrary to Zirbel's argument, does not create a right to legal relief alone.

Zirbel separately claims that the funds are no longer in her possession because she placed them in investment accounts, made gifts to children, paid taxes, and so forth. But simply commingling funds into accounts and spending the money does not by itself extinguish a lien. She has no answer to Ford's analysis on this front. She has not, for example, asked us to distinguish between her accounts when it comes to where the lien should attach or for that matter claimed complete dissipation. More to the point, she failed to present this argument to the district court and did not even cite *Montanile*, perhaps because the language of the *Montanile* plan undermined her main argument—that the word "amount" necessarily makes Ford's reimbursement remedy legal relief.

*Equitable Estoppel.* Zirbel argues that Ford should be equitably estopped from recovering the overpayments. When she received the lump sum offer, she thought the numbers were wrong. As a result, she asked Ford to recalculate her benefits, and it did not change the sum owed. This confirmation, she claims, binds Ford now.

But to bring an equitable-estoppel claim, Zirbel had to show that Ford made fraudulent representations to her, that she did "not know the truth behind [Ford's] representations," *Trs. of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2000), and that she justifiably relied on Ford's representations to her detriment, *see Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991), *abrogated on other grounds*, *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). *Cf. Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998).

Zirbel cannot satisfy these requirements. She has not shown, for one, that Ford's inclusion of an incorrect retroactive-payment amount "contain[ed] an element of fraud, either intended deception or such gross negligence . . . as to amount to constructive fraud." *Mich. Laborers' Health Care Fund*, 209 F.3d at 591 (quotation omitted). Ford did not know that it had the wrong number. At most, Zirbel has shown that the company made a mistake—that it was guilty of misfeasance, not the malfeasance that estoppel requires.

Zirbel also cannot establish the "reasonable or justifiable reliance" that the claim requires. *Sprague*, 133 F.3d at 404. By her own account, Zirbel "knew the retroactive . . . payment was too much" when she accepted it. R.25-3 at 64. And she had as much chance as Ford to reach the right number. Ford's mistake was based on a date mix-up, and Zirbel knew that her commencement date was 2009, not 1998. She also knew the value of her monthly pension from the offer letter. Indeed, she ran the numbers on her own, reaching an in-the-ballpark estimate of $112,000.

Though the offer stated that it was a "final and complete settlement" of her benefits, R.1-13 at 10–11, a party's reliance "can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Sprague*, 133 F.3d at 404. Otherwise, we would be permitting estoppel "to override

the clear terms of plan documents" and would be permitting the party to "enforce something other than the plan documents themselves," an ERISA no-no. *Id.* This plan requires reimbursement of overpayments in the event of an error, making Zirbel's reliance on general language about a final and complete settlement in other documents unreasonable as a matter of law.

It's true that we have permitted equitable estoppel claims to override unambiguous plan language in cases involving "extraordinary circumstances." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010). But we have declined to call the circumstances "extraordinary" in another case involving Ford, in which the beneficiary "expended considerable energy evaluating her situation, discussing with Ford representatives what her options were, and ensuring that paperwork would be completed accurately to ensure her pension would be paid out properly." *Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667, 675 (6th Cir. 2016) (quotation omitted). That's essentially what we have here.

*Fairness.* Zirbel claims that the recoupment is "inequitable" under *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1251 & n.3 (6th Cir. 1991). The parties dispute when, whether, and how *Wells* fits into the analysis. We need not resolve the point because this repayment is hardly inequitable. Zirbel knew that the retroactive payment was too high when she got it, the text of the plan put her on notice that Ford could demand repayment, and she admits she has the capacity to return the money—all preventing her from wrongly keeping money from a finite retirement fund meant to benefit many other Ford retirees and their spouses. As for the indignity of paying taxes on money she must now return, we can sympathize. While we are not tax advisors, she may have recourse: say re-opening the past tax returns or seeking a tax credit for future tax returns. She has not claimed at any rate that these options are unavailable.

We affirm.