RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHEET METAL WORKERS' HEALTH AND WELFARE
FUND OF NORTH CAROLINA,

                                *Plaintiff-Appellant*,

    *v*.

LAW OFFICE OF MICHAEL A. DEMAYO, LLP,

                                *Defendant-Appellee*.

No. 21-5011

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00155—Eli J. Richardson, District Judge.

Argued:  October 20, 2021

Decided and Filed:  December 17, 2021

Before:  BATCHELDER, LARSEN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Michael J. Wall, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellant.  Erik C. Lybeck, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellee.  Blair L. Byrum, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.  **ON BRIEF:**  Michael J. Wall, Karla M. Campbell, BRANSTETTER, STRANCH & JENNINGS, PLLC, Nashville, Tennessee, for Appellant.  Erik C. Lybeck, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellee.  Blair L. Byrum, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  For those who enjoy unsettled legal questions, who would not welcome the opportunity to navigate a labyrinth of ancient equitable doctrines

nested within a federal statute, with little precedent to inform that review? All of that is presented in this appeal. Add to that the *amici* participation of a federal agency, and the table seemingly is set for a jurisprudential feast. But resolution of those issues must remain on ice, so to speak, because they were not preserved for appellate review. On that basis, we affirm the judgment of the district court.

## BACKGROUND

Courtney Simpson was injured in a car accident. Her insurer, the Sheet Metal Workers' Health and Welfare Fund of North Carolina (the Fund), paid Simpson's $16,225 in medical costs incurred as a result of the accident. Simpson hired the Law Office of Michael A. DeMayo, LLP (the Firm) to represent her in a personal injury suit arising from the accident. The Fund maintained a right of subrogation and reimbursement, meaning that if Simpson received a settlement, the Fund was entitled to be reimbursed for the medical costs it covered. Simpson eventually settled her suit for $30,000. After depositing the settlement funds in a trust account, the Firm made various payments from those funds: $9,817.33 to Simpson, $1,000.82 to other lienholders, and $10,152.67 to the Firm's own operating account for fees and expenses related to the suit. Aware of the Fund's right to reimbursement for $16,225, the Firm nonetheless offered the Fund $9,029.18 "in full and final satisfaction of the Fund's lien," but did not disburse any money to the Fund.

Rather than accepting the Firm's offer, the Fund filed suit against the Firm under § 502(a)(3) of the Employee Retirement Income Security Act, claiming an equitable lien to the entire $16,225. The Fund sought a temporary restraining order to enjoin the Firm "from disposing of any or all Fund assets in its possession." The same day, the Firm issued a $9,029.18 check to the Fund from the trust account. That payment, which exhausted the settlement funds remaining in the trust account, left $7,195.82 of the Fund's reimbursement claim outstanding. The Fund claimed an equitable lien as to that amount. In a March 27, 2019 order, the district court issued a TRO requiring the Firm to "maintain at least $7,497.99 in its operating account until further orders of the Court or the resolution of Plaintiff's claim." (The correct amount

subject to the TRO was $7,195.82 but due to a scrivener's error the TRO incorrectly stated the amount as $7,497.99.)

Eventually, the parties filed cross motions for summary judgment on the Fund's ERISA claim. Some threshold legal points deserve mention here. Section 502(a)(3) of ERISA empowers an employee welfare benefit plan to bring a civil suit to enforce the terms of a plan, but only if the suit seeks an equitable (rather than a legal) remedy. 29 U.S.C. § 1132(a)(3); *see also Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). Where a plaintiff asserts a right to possess specific, identifiable property that is in the defendant's possession (including a specific sum of money), the plaintiff seeks an equitable remedy. *Knudson*, 534 U.S. at 213. Where, on the other hand, a plaintiff seeks to recover money from the defendant's general assets, it pursues a legal remedy. *Id.*; *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020). Relevant here are the concepts of "dissipation" and "commingling." If a defendant spends the plaintiff's claimed funds on nontraceable items (like food, services, or travel), the defendant dissipates the funds, in that the defendant no longer possesses the specific claimed funds or their proceeds, making the plaintiff's remedy a legal one. *Montanile*, 577 U.S. at 139, 145. Alternatively, if a defendant only commingles the plaintiff's claimed funds with its other assets, the defendant still possesses the claimed funds, making the plaintiff's remedy an equitable one. *Zirbel*, 980 F.3d at 524 (citing *Montanile*, 577 U.S. at 149). In other words, dissipating all of the plaintiff's claimed funds bars recovery under ERISA § 502(a)(3), but commingling those funds does not. *Id.*; *see also Knudson*, 534 U.S. at 213–14.

Back to the parties' cross-motions for summary judgment. There, the parties disputed whether the Fund sought an equitable remedy. In its motion, the Firm argued that the Fund sought a legal remedy because the Firm no longer possessed the settlement funds. According to the Firm, that was true for two independent reasons. First, the Firm said it commingled the settlement funds by depositing them into its operating account. And second, the Firm contended that it dissipated the settlement funds before the district court issued the TRO by spending them on its own general expenses. The Fund, for its part, argued in its motion that it sought an equitable remedy because the settlement funds were in the Firm's possession pursuant to the

TRO, which required the Firm to maintain $7,497.99 in its operating account until the case's resolution. In its reply brief to its own motion for summary judgment, the Fund, for the first time, cited the lowest intermediate balance test, which states that, generally, a defendant fully dissipates a plaintiff's claimed funds (by spending money from the commingled account to purchase untraceable items) only if the balance in the commingled account dipped to $0 at any point between the date the defendant commingled the funds and the date the plaintiff asserted its right to the funds. Restatement (First) of Restitution §§ 212; 215(1) cmt. a (Am. Law Inst. 1937). The Fund invoked that test, however, to argue that commingling did not bar relief under ERISA § 502(a)(3) and that the Firm had not dissipated the $7,497.99 because of the TRO. The Fund, it bears noting, did not address how the lowest intermediate balance test applied to the Firm's argument that it dissipated the funds prior to the district court's March 27, 2019 order.

The district court granted the Firm's motion (and, in turn, denied the Fund's motion). The district court concluded that the Firm had dissipated the settlement funds prior to the issuance of the TRO, meaning the money held in the Firm's operating account pursuant to the TRO was not the settlement funds. And because the Fund could not point to specific recoverable funds held by the Firm, it sought a legal remedy beyond the scope of ERISA, *see* 29 U.S.C. § 1132(a)(3), entitling the Firm to summary judgment.

## ANALYSIS

On appeal, the Fund argues that the district court erred by failing to apply the lowest intermediate balance test when determining whether the Firm dissipated the settlement funds prior to the issuance of the TRO. Had the Fund properly preserved that argument for appellate review, we would turn to it now. *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). Regrettably, it did not.

Before a party may present an issue for our review, we customarily require the party to raise the issue in the district court. *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019). (We use the word "issue" here to refer to what might also be deemed a "claim" or an "argument." The distinction may matter in some cases, but it does not matter here.) Otherwise, omission of an issue in the district court typically will amount to a forfeiture of the issue,

meaning we will not consider it on appeal. We adhere to this practice so that both the parties and this Court have the benefit of the district court's assessment of the issue when the case is taken up on appeal. *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993). We likewise do so out of respect for the district court, as it would surely seem unfair to that court for a party to ask us to assign error to the district court on an issue the party never presented to the district court in the first instance. After all, "[o]ur function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Barner*, 399 F.3d at 749 (cleaned up). This practice also conserves the judiciary's time and resources by not requiring lower courts—who have burdensome dockets already—to re-adjudicate matters that should have been raised earlier. *Id.* And it "ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

Numerous aspects of the district court proceedings reveal how the Fund failed to preserve its current lowest intermediate balance test argument. First, consider the overarching way in which the Fund presented its case to the district court. The Fund's central theme was that the Firm, in accordance with the TRO, possessed the settlement funds in its operating account, and that any commingling in that account by the Firm did not prevent the Fund from recovering under § 502(a)(3). Tellingly, the Fund did not argue (as it does now) that the lowest intermediate balance test was the proper method to determine if the Fund dissipated the settlement funds prior to the TRO.

Second, the Fund made no mention of the lowest intermediate balance test in response to the Firm's motion for summary judgment, which the district court later granted, and which is the dispositive ruling now before this Court. In its motion, the Firm asserted that it no longer possessed the settlement funds both because it had commingled those monies by depositing them into its operating account, and because it had dissipated the funds prior to the issuance of the TRO by spending them on general expenses. The Fund responded that the Firm possessed the settlement funds pursuant to the TRO, which required the Firm to maintain $7,497.99 in its operating account until the case was resolved. But it made no mention of the lowest intermediate balance test, let alone how it should affect the dissipation analysis. Indeed, the lone instance in which the Fund invoked the test was in its reply brief in support of its own summary judgment

motion. And even then, it did so to argue that commingling does not bar recovery under ERISA § 502(a)(3) and that the Firm did not dissipate the $7,497.99 held pursuant to the TRO, different arguments than the dissipation point the Fund now asserts.

Third, the Fund failed to offer evidence supporting its proposed application of the lowest intermediate balance test. In the Fund's view, the Firm fully dissipated the settlement funds only if the balance in its operating account dipped to $0 between December 7, 2018 and March 27, 2019, the period between when the Firm commingled the settlement funds and when the district court issued the TRO. Yet what evidence did the Fund offer to dispel any notion of dissipation? Merely a deposit slip from December 7, 2018, which indicated that the balance of the Firm's operating account was $89,892.14, along with the Firm's agreement on March 27, 2019, to maintain at least $7,497.99 in its operating account pursuant to the TRO. Those two modest data points tell us nothing about the operating account's balance in the intervening 110 days. Had the Fund in fact sought to apply the lowest intermediate balance test in the way it does now, it undoubtedly would have introduced at least some evidence of the operating account balance during the intermediate period. And if the Fund did not possess that evidence, it could have requested bank statements from the Firm or its bank, deposed Firm personnel, asked for additional discovery, retained a forensic accounting expert, or, at the very least, contested the Firm's argument that it dissipated the settlement funds before the TRO issued. Yet it did none of those things.

True, we sometimes will "find no forfeiture on appeal when a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised." *United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) (cleaned up). Even so, here the Fund has not, for example, merely cited an additional case in support of an argument already made. Nor is the Fund's proposed application of the lowest intermediate balance test a mere "strain" of a preserved argument.

For all of these reasons, the Fund's argument is barred by "the forfeiture rule, which tells us to correct errors raised and addressed below, not to entertain new claims raised for the first time on appeal." *Greco v. Livingston County*, 774 F.3d 1061, 1064 (6th Cir. 2014); *Armstrong v.*

*City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal."). Although we have discretion to consider a forfeited argument when not doing so "would produce a plain miscarriage of justice," "[w]e have rarely exercised such discretion." *Scottsdale*, 513 F.3d at 552 (cleaned up). Today's case is a particularly poor candidate for exercising that discretion, where the Fund neither developed the evidentiary record nor responded to the Firm's arguments before the district court. It is too late to do so now.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.