NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0359n.06

Case No. 22-3005

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

AMERICAN ELECTRIC POWER SERVICE CORPORATION, as fiduciary of the AMERICAN ELECTRIC POWER SYSTEM COMPREHENSIVE MEDICAL PLAN,

    Plaintiff-Appellant,

v.

JOHN K. FITCH, as administrator of the ESTATE OF JOHN D. FITCH; GLORI FITCH,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Aug 30, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: GUY, MOORE, and CLAY, Circuit Judges.

The court issued a PER CURIAM opinion. GUY, J. (pp. 13–18), delivered a separate dissenting opinion.

**PER CURIAM.** A tragic automobile accident resulted in the death of John "Jack" D. Fitch and the payment of expenses for accident-related medical treatment by the American Electric Power System Comprehensive Medical Plan (Plan). Jack was enrolled as a beneficiary under the self-funded medical plan that his mother participated in as an employee of American Electric Power Service Corporation (AEP). In this action brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. (ERISA), AEP, on behalf of the Plan, sought to impose "an equitable lien by agreement over identifiable [third-party settlement] funds in the

possession and/or control of" Jack's father, John K. Fitch, as the Administrator of the Estate, and/or Glori Fitch, Jack's mother as a Plan participant.

The district court dismissed the complaint without reaching the merits of the ERISA claims after concluding that the "probate exception" deprived the federal court of subject-matter jurisdiction. *See Fitch v. Am. Elec. Power Sys. Comprehensive Med. Plan*, No. 21-CV-576, 2021 WL 5711909, at *10–12 (S.D. Ohio Dec. 2, 2021). AEP appealed, arguing that the district court erred in dismissing its complaint. The Fitches respond that AEP has forfeited any challenge to the district court's conclusion that federal courts lack jurisdiction to hear its claims. We agree with the Fitches and **AFFIRM**.

I.

The facts of this case revolve around medical expenses. Glori Fitch was employed by AEP, enrolled in the Plan, and designated her son, Jack Fitch, as a beneficiary of that Plan. R. 1 (Compl. ¶ 9) (Page ID #2). On October 11, 2019, Jack was critically injured in an automobile accident, dying the next day. *Id.* ¶ 10. AEP alleges that the Plan paid benefits in the amount of $101,582.46 for Jack's accident-related medical treatment. *Id.* The Plan's terms contain a provision providing that, in the event that benefits paid on the beneficiary's behalf have not been repaid, the Plan has "a right to be repaid from [a] Recovery in the amount of the benefits paid on your behalf." R. 1-1 (Plan at 2) (Page ID #9).

As a result of Jack's death, the administrator of Jack's estate, John K. Fitch, (Administrator) obtained two settlements: (1) $500,000 from the "at-fault" driver's insurance on a wrongful-death liability claim; and (2) $100,000 from the Fitches' own automobile policy on a medical-payments claim. *Fitch*, 2021 WL 5711909, at *2–3. There seems to be no dispute that

Anthem Blue Cross and Blue Shield (Anthem) asserted the Plan's right to subrogation and/or reimbursement by sending a letter to the Administrator. *See id.* at *2.

On October 12, 2020, the Administrator filed an "Application to Approve Settlement and Distribution of Wrongful Death and Survivor Claims" in the Probate Court of Franklin County, Ohio. R. 1-2 (Application) (Page ID #11–15). In it, the Administrator proposed that all $600,000 in settlement proceeds be allocated to the wrongful-death claims of Jack's surviving parents and other next of kin "who have suffered damages by reason of the wrongful death." *Id.* at 2 (Page ID #12). The Application was accompanied by a "Narrative Statement," which represented, in part: (1) that negotiations continued as to a claim against an umbrella policy; and (2) that Anthem had asserted a lien totaling $101,582.46 that would be disputed. *Id.* at 3 (Page ID #13). The probate court approved the settlement and distribution the same day, allocating $260,750 to John K. Fitch (father); $250,750 to Glori Fitch (mother); and $88,500 to Charles Fitch (brother). *Id.* at 4–5 (Page ID #14–15).

By all accounts, the Administrator did not send Anthem notice of the Application until ten days later. The Plan responded by asserting that it had a right to reimbursement from the settlement proceeds, while the Administrator contended that the settlement proceeds were not part of the Estate. *Fitch*, 2021 WL 5711909, at *3. The lien dispute resulted in two lawsuits, which were resolved by the district court in the single consolidated order before us now. *See id.* at *1.

Those lawsuits involved the following maneuvers. First, the Administrator sued the Plan in the Franklin County Court of Common Pleas seeking a declaration that the Plan was not entitled to reimbursement because the settlement proceeds had been allocated to the wrongful-death claims—not the survival claim. *Id.* at *3. The Plan then removed that action to federal court (No. 21-cv-576) and filed its separate ERISA action seeking reimbursement in federal court (No. 21-

cv-682). *Id.* The district court's consolidated order (1) remanded the Administrator's declaratory judgment action and (2) dismissed the Plan's ERISA action for lack of subject-matter jurisdiction based on the probate exception. *Id.* at \*15. The Plan filed—but abandoned—an appeal from the remand. App. R. 16 (No. 22-3004) (Order). The Plan has expressly limited the present appeal to the dismissal of its claim against the wrongful-death proceeds in the possession of Glori Fitch. *See* Appellant Br. at 5; Reply Br. at 1.

## II.

The district court recognized that the defendants' motion to dismiss the Plan's ERISA complaint for lack of subject-matter jurisdiction was a facial attack—not a factual attack—under Federal Rule of Civil Procedure 12(b)(1). *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). Because a facial attack is a challenge to the sufficiency of a complaint, the court examines the sufficiency of the pleading by taking the material allegations as true and viewing them in the light most favorable to the non-moving party. *See Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Tr.*, 491 F.3d 320, 330 (6th Cir. 2007); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "When a defendant moves to dismiss for lack of subject matter jurisdiction 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). This court's review of a dismissal for lack of jurisdiction based on a facial attack is de novo. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012).

## A.

The Supreme Court has recognized "a probate exception of distinctly limited scope," explaining that "a federal court may not exercise its jurisdiction to disturb or affect the possession

of property in the custody of a state court." *Marshall v. Marshall*, 547 U.S. 293, 310 (2006) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). This "longstanding limitation[] on federal jurisdiction otherwise properly exercised," is a "judicially created doctrine[] stemming in large measure from misty understandings of English legal history." *Id.* at 299 (citations omitted). Clarifying and curtailing the probate exception, *Marshall* reiterated that the courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id*. 298–99 (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).[1]

The Supreme Court in *Marshall* explained that, following *Markham*, federal courts "puzzled over the meaning of the words 'interfere with the probate proceedings'" and that "some [courts] have read those words to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Id*. at 311; *see, e.g.*, *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 800–01 (6th Cir. 2015) (recognizing that *Marshall* abrogated *Lepard v. NBD Bank*, 384 F.3d 232, 234–37 (6th Cir. 2004)). As the Supreme Court elaborated:

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 547 U.S. at 311–12. That is, the "interference" referred to in *Markham* was "essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a

---

[1] *Marshall* left open whether the probate exception has application when jurisdiction is based on federal question as well as diversity of citizenship. *Marshall*, 547 U.S. at 308-09. *But see Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (post-*Marshall* decision finding "no good reason to strain to give different meaning to the identical language in the diversity and federal-question statutes"); *Tonti v. Petropoulous*, 656 F.2d 212, 215–16 (6th Cir. 1981) (pre-*Marshall* decision applying probate exception to action brought under 42 U.S.C. § 1983). AEP has not urged this court to limit the scope of the probate exception. Nor is it necessary to do so given our resolution of this appeal. We therefore express no opinion on whether or how the probate exception applies in federal-question cases.

*res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 311; *see also Chevalier*, 803 F.3d at 800; *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017).

Since *Marshall* was decided, we have applied its framework on numerous occasions. *See, e.g.*, *Osborn*, 865 F.3d at 433–36; *Chevalier*, 803 F.3d at 799–804; *Wisecarver*, 489 F.3d at 749–51. Notably, in *Wisecarver* we considered a plaintiff who sought, inter alia, an order enjoining the defendants from disposing of assets received from an estate. 489 F.3d at 751. We concluded that the probate exception barred jurisdiction in that case to the extent that granting the requested relief "would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets." *Id.* We will return to *Wisecarver* and its application in the present dispute below.

B.

The complaint before us, filed February 16, 2021, seeks to impose "an equitable lien by agreement over identifiable funds in the possession and/or control of" John Fitch, as Administrator of the Estate, or Glori Fitch, as a Plan participant. R. 1 (Compl. ¶ 3) (Page ID #2). Specifically, AEP asserts an equitable lien pursuant to § 502(a)(3) of ERISA against: (1) the medical-payment settlement proceeds in the possession of the Administrator; and (2) the wrongful-death proceeds allocated to Glori Fitch. *See* 29 U.S.C. § 1132(a)(3). AEP alleges a right to reimbursement under the terms of the Summary Plan Description that "constitutes an equitable lien by agreement over the proceeds of any settlement, including recoveries obtained by the covered person's relatives, heirs, or assignees." R. 1 (Compl. ¶ 12) (Page ID #3). In terms of relief, the complaint asks that an equitable lien be imposed "upon the settlement proceeds"; that the defendants be required, "as [a] constructive trustee, to transfer the funds" to AEP; and that the defendants be enjoined from "transferring or disposing of the settlement funds which would prejudice, frustrate, or impair

[AEP's] ability to recover the same." *Id.* ¶ 39 (Page ID #6–7.) Because the Plan has limited the scope of its appeal, we consider these requests only insofar as they relate to Glori Fitch.

There can be no dispute that AEP does not seek to probate (or annul) a will or to administer the decedent's estate. *See Chevalier*, 803 F.3d at 801. Furthermore, the district court discarded these options, and AEP does not challenge the court's reasoning here. *Fitch*, 2021 WL 5711909, at *10. The question then is simply whether this action seeks to reach the same *res* over which the probate court has custody. *Chevalier*, 803 F.3d at 801 (citing *Wisecarver*, 489 F.3d at 750–51).

To resolve that, we first ask whether the claim is *in personam* or *in rem*. *Id.* An *in personam* action is "'brought against a person rather than property,' and the judgment 'is binding on the judgment-debtor and can be enforced against all the property of the judgment-debtor.'" *Id.* at 801–02 (citation omitted). In contrast, a claim for reimbursement under § 502(a)(3)(B) of ERISA is one for "'restitution in equity,' not 'restitution at law.'" *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002)); *see also Sereboff v. Mid. Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–63 (2006). "A court awards equitable restitution when it imposes a lien on 'particular funds or property in the defendant's possession' but legal restitution when it holds the defendant liable for a sum of money." *Zirbel*, 980 F.3d at 524 (quoting *Knudson*, 534 U.S. at 214). Nor can the ERISA remedy be a judgment against a defendant's general assets. *See Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 144–46 (2016).

Again, the district court determined that AEP's ERISA claims invoke the federal court's *in rem* jurisdiction over identifiable settlement proceeds. *Fitch*, 2021 WL 5711909, at *11. And again, AEP does not challenge that determination. We are therefore left to conclude that AEP's

claim would invoke the district court's *in rem* jurisdiction over the settlement proceeds. Our inquiry continues.

Next, a federal court may exercise subject-matter jurisdiction over such proceeds as are at issue here unless the relief sought would require that the court "'elbow its way into' an ongoing 'fight[] over a property or a person in [another] court's control.'" *Chevalier*, 803 F.3d at 802 (quoting *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)). In other words, were the settlement proceeds in the custody of the probate court when the federal action was filed? The district court concluded that they were, reasoning that "were this Court to grant AEP's requested relief, it would both (i) impose upon the Probate Court's jurisdiction over the Administrator's account and/or its distribution of the Fitch Estate, and (ii) 'require the district court to dispose of property in a manner inconsistent with' the Probate Court's judgment." *Fitch*, 2021 WL 5711909, at \*12 (quoting *Wisecarver*, 489 F.3d at 750). Unfortunately, AEP did not address why this conclusion was flawed either in its opening appellate brief or in its reply brief. That is a problem for AEP's appeal.

C.

"In this Circuit, an appellant forfeits an argument that [it] fails to raise in [its] opening brief." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (collecting cases). That proposition stems from Federal Rule of Appellate Practice 28(a)(8), which requires that an appellant's brief contain the party's "contentions and reasons for them, with citations to the authorities . . . on which the appellant relies," and has led us to stress repeatedly that appellants must address in their opening brief the reasons provided by the district court or else risk forfeiting the argument that the district court erred. *See*, *e.g.*, *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will

treat an 'argument' as 'forfeited when it was not raised in the opening brief.'" (quoting *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008))); *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 179 (6th Cir. 2020) (failure to address case on which district court's decision rested resulted in argument being forfeited); *Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124–25 (6th Cir. 2018) (failure to address alternative basis on which district court's decision rested resulted in forfeiture).

Those principles resolve this case. AEP focuses its briefing on the argument that the probate court did not have jurisdiction under Ohio law to adjudicate its ERISA claim for reimbursement from the wrongful death proceeds allocated to Glori Fitch. Distilled, AEP's position is that "[t]he district court erred in finding that enforcement of the AEP Plan was within the jurisdiction of the Franklin County Probate Court." Appellant Br. at 8. AEP proceeds in its opening brief to discuss Ohio law and the scope of the probate court's jurisdiction under it, a strategy that it repeats in its reply brief. This is a misdirection for a couple of reasons.

First, the probate exception is a creature of *federal*, not state, law. *See Chevalier*, 803 F.3d at 801. Indeed, the Supreme Court has "firmly rejected the proposition that a federal court's subject-matter jurisdiction is dependent upon state law." *Id.* (citing *Marshall*, 547 U.S. at 314). That means that we "look to only federal law to determine whether the probate exception . . . applies." *Id.* AEP's heavy reliance on Ohio law in its opening brief combined with its lack of any citations to our probate-exception cases is unhelpful to determining whether the district court erred in applying that exception.

Second, and more fundamentally, the district court did not ultimately base its conclusion on Ohio law. Regardless of whether the probate court had jurisdiction over this *claim*, the district court rested its decision on whether the probate court continued to have custody over the *res*.

Relying on our decision in *Wisecarver*, the district court determined that exercising subject-matter jurisdiction over AEP's claim would result in the district court disposing of property inconsistent with the probate court's judgment. *Fitch*, 2021 WL 5711909, at *12 (citing *Wisecarver*, 489 F.3d at 750). This was because the probate court's allocation of the settlement proceeds was wholly to the estate's wrongful-death-proceeds account and because the estate remained open. *Id*. Therefore, the district court concluded that the relief that AEP sought would interfere with this distribution process, thus triggering the probate exception. *Id*.

Right or wrong, AEP does not address the district court's reasoning on this point.[2] Nor does AEP even cite *Wisecarver*, much less attempt to distinguish it, in its opening brief. Then, despite the Fitches discussing that case extensively in their response brief, AEP in its reply brief continued to provide no analysis of *Wisecarver*'s application; instead, AEP doubled down on its state-law theory, analyzing the estate's *res* in this context. Reply Br. at 3–4. In fact, the only guidance that we have been provided from the briefs on how the probate exception operates in these circumstances has come from the Fitches, not AEP.

It is true that AEP's opening brief contains a header that reads: "the district court erred in holding that AEP's claim against Glori Fitch was barred by the probate exception." Appellant Br. at 7. But as other courts have held, "a litigant who fails to press a point by supporting it with

---

[2] AEP comes closest to addressing the issue in the final paragraph of its initial appellate brief when it argues that the district court did not accept as true its allegation that "Glori Fitch was in possession of the wrongful death settlement proceeds allocated to her." Appellant Br. at 16. There are two issues with this argument, however. To start, this is not what AEP alleged in its complaint. Instead, there AEP alleged that "John K. Fitch as administrator of the Estate, *or* Glori Fitch, is in possession of $250,750.00 paid." R. 1 (Compl. ¶ 31) (Page ID #5) (emphasis added). Setting aside that this allegation's either/or construction leaves unresolved who specifically AEP was alleging to be in possession of the wrongful-death proceeds, it does not address the district court's reasoning that exercising federal jurisdiction would "'require the district court to dispose of property in a manner inconsistent with' the Probate Court's judgment." *Fitch*, 2021 WL 5711909, at *12 (quoting *Wisecarver*, 489 F.3d at 750).

pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) (quoting *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995)); *see also JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016). AEP, which is represented by counsel, has failed either to engage with the authorities with which the district court engaged or to show why different reasoning other than what the district court provided should control. Given the nuances entailed in the probate exception, those are not small oversights. Such failures lead us to conclude that AEP has forfeited the argument that the district court erred in applying the probate exception.

Finally, although the dissent is right to note that we must exercise jurisdiction when it is given, *see Marshall*, 547 U.S. at 298–99, that proposition goes only so far. "[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). For this reason, it is the burden of the party asserting subject-matter jurisdiction to show that such jurisdiction is ours to exercise. *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 (6th Cir. 2018) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Our duty is to identify when we *lack* jurisdiction, not to identify arguments that a party could have made for why we *possess* it. *See* 13 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522 (3d ed. 2022) ("Even if the parties remain silent, a federal court, whether trial or appellate, is obliged to notice on its own motion its lack of subject matter jurisdiction, or the lower court's lack of subject matter jurisdiction when a case is on appeal."). Consequently, if a party appeals a district court's dismissal of a complaint for lack of subject-matter jurisdiction, then general references in the appellant's opening brief to the exception applied below and a lack of engagement with the relevant law does not suffice to carry that party's burden.

### III.

We **AFFIRM** the judgment of the district court.

RALPH B. GUY, JR., Circuit Judge, dissenting. I have no quarrel with the court's discussion of the facts or the general principles governing the probate exception to the exercise of federal subject matter jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293 (2006). I cannot agree, however, that AEP forfeited review of whether the probate exception applies to its ERISA claim to the extent it seeks an equitable lien against any wrongful death proceeds in the possession or control of Glori Fitch. I would reach the issue and then reverse and remand for further proceedings as to that claim. Courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id*. at 298-99 (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

1.

AEP's opening brief squarely and unequivocally asserts the very claim that the court finds was forfeited. That is, AEP describes the sole issue on appeal to be "[w]hether the district court correctly held that the probate exception divested the federal court of subject matter jurisdiction to enforce the provisions of an employee benefit plan under 29 U.S.C. § 1132(a)(3) against funds allocated as wrongful death proceeds and excluded from the decedent's estate and alleged to be in the possession of a plan participant." (Opening Br., p. 2). AEP's "Summary of the Argument" includes the argument that "[t]he probate exception does not divest the district court of subject matter jurisdiction to hear a claim arising under a separate contractual obligation." (Opening Br., p. 5). And, as the majority opinion acknowledges, AEP's argument heading claims that the district court "erred in holding that AEP's claim against Glori Fitch was barred by the probate exception." (Opening Br., p. 7). Finally, AEP also argues that its complaint sufficiently alleged that Glori Fitch was in possession of funds that "were allocated to [her] as wrongful death proceeds and never became an asset of the Decedent's estate." (Opening Br., p. 15). That is, AEP argues, the district

court erred by not accepting as true its allegation that the settlement proceeds were not in the custody of the probate court.[1]

Indeed, even the Fitches' brief undermines the court's finding of forfeiture. That is, the Fitches say AEP's argument is *wrong* because "the applicability of the probate exception turns on the probate court's jurisdiction over the *property* at issue, not that court's ability to hear the precise *claims* that the federal-court plaintiff is asserting." (Fitches' Br., p. 17 (citing *Osborn v. Griffin*, 865 F.3d 417, 434-35 (6th Cir. 2017) (focusing on the remedies sought and whether the disputed property was part of the *res* of the probate court))). AEP directs its focus to the property by arguing that its claim does not ask the federal "courts to exercise *in rem* jurisdiction over the same *res* over which the probate court is exercising *in rem* jurisdiction." (Reply, p. 3). AEP goes on to argue that "the probate court allocated the entire settlement to the wrongful death claims of the survivors, taking [the settlement funds] outside the Estate and thus outside of the probate court's *in rem* jurisdiction," which therefore meant "the district court was free to exercise *in rem* jurisdiction over the same proceeds." (Reply, p. 4).

Thus, the arguments AEP makes in its briefing do, in fact, address the question that the majority opinion aptly identifies: "whether this action seeks to reach the same *res* over which the probate court had custody." (Maj. Op., p. 7 (citing *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 802 (6th Cir. 2015) (citing *Wisecarver v. Moore*, 489 F.3d 747, 750 (6th Cir. 2007)))).

---

[1] It makes no difference that AEP's complaint alleged, upon information and belief, that the wrongful death proceeds allocated to Glori Fitch were in the possession of *either* the Administrator *or* Glori Fitch. *See* Fed. R. Civ. P. 8(d)(2) ("If any party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). In narrowing its claim on appeal, AEP has expressly limited its ERISA claim to one for an equitable lien against proceeds that are in Glori Fitch's possession. On a motion to dismiss, AEP need not prove that such proceeds actually are in her possession—only that AEP is not barred from pursuing its claim as to any proceeds that may be in her possession.

This remains true notwithstanding AEP's misguided discussion of Ohio law. The district court here understood AEP to argue that the probate court could have no custody over the *res* because "Ohio probate courts 'do not have jurisdiction to adjudicate the enforceability of a contract that falls outside the administration of the [Fitch] Estate.'" (Order, p. 16). In other words, AEP's position was that the federal court could exercise *in rem* jurisdiction precisely because the probate court could not. The district court devoted several pages of its opinion to rejecting this argument before concluding "the probate exception remains applicable to AEP's claim against Glori Fitch." (Order, p. 20). It is not surprising then that AEP returns to this argument as a basis for rejecting the probate exception. (Reply, p. 5 ("the lack of probate court jurisdiction necessarily precludes application of the probate exception")). But that is a misguided subsidiary argument—not one of two independent grounds for dismissing the ERISA claim. *See Glennborough Homeowners Ass'n v. USPS*, 21 F.4th 410, 418 (6th Cir. 2021) (White, J., concurring in part) (explaining that when a district court dismisses a claim on two independent grounds, a plaintiff must challenge the decision with respect to both).

Before declaring forfeiture, we need to look behind the general admonition that "we will treat an 'argument' as forfeited, when it was not raised in the opening brief." *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). The forfeited claim in *Island Creek* was, in fact, an independent Appointments Clause challenge. *See id.* Similarly, in *Scott v. First Southern National Bank*, the district court dismissed a fraudulent misrepresentation claim solely on statute of limitations grounds, but plaintiffs' opening brief "argue[d] exclusively that the district court improperly dismissed th[at] claim *on the merits*." 936 F.3d 509, 522 (6th Cir. 2019) (emphasis added). Forfeiture in that case was obvious. *See also In re Issacs*, 895 F.3d 904, 917 (6th Cir. 2018) (finding amici curiae's independent claim that mortgage could be avoided as a preferential

transfer was forfeited because it was not included in the appellant's opening brief). I would not find that AEP forfeited its challenge to the application of the probate exception to the federal court's exercise of its subject matter jurisdiction.

2.

The district court recognized that AEP's ERISA action invokes the court's *in rem* jurisdiction, and identified the final inquiry regarding application of the probate exception to be whether the relief sought by AEP would require the court to "'elbow' itself into an 'ongoing fight' over *res* that is within the 'custody' or 'control' of the Probate Court." (Order, p. 21-22 (quoting *Chevalier*, 803 F.3d at 802)). Uncertain whether the *res* had been fully disbursed to Glori Fitch, the district court found that it did not matter because AEP's requested relief would require it "'to dispose of property in an manner inconsistent with' the Probate Court's judgment." (Order, p. 23 (quoting *Wisecarver*, 489 F.3d at 750)).

AEP directly disputed that its claim "would require the district court to disturb, or override, the probate court's allocation order." (Reply, p. 4). AEP clarifies its position by arguing that "[t]he relief requested by AEP does not require the district court to reclassify the settlement as anything other than wrongful death proceeds." (Reply, pp. 4-5). In other words, AEP explains that it is not asking the federal court "to dispose of property in a manner inconsistent with the state probate court's distribution of assets." *Wisecarver*, 489 F.3d at 750. This is the critical question and AEP cited both *Marshall* and *Chevalier*—even though it did not discuss *Wisecarver*.

Reviewing this dismissal for lack of subject matter jurisdiction *de novo*, the allegations place AEP's claim with respect to any wrongful death proceeds in Glori Fitch's possession or control outside the scope of the "distinctly limited" probate exception. *Marshall*, 547 U.S. at 310. That is the case notwithstanding *Wisecarver*, where the plaintiffs claimed to be the intended and

rightful beneficiaries of the decedent's will and alleged that the defendants had used undue influence to procure and promote a false will and to obtain and use a power of attorney to make *inter vivos* transfers. *Id*. at 748-49. The *in personam* claims for damages relating to allegedly improper *inter vivos* transfers were not barred by the probate exception. *Id*. at 750-51. But for claims seeking "money damages equal to the amount of the probate disbursements," we held that the probate exception applied "since it would be tantamount to setting aside the will." *Id*. at 750 n.1. We explained: "Even though these claims in this case seek *in personam* jurisdiction, a majority of the relief that [p]laintiffs seek would involve disturbing [the decedent's] estate, which has already been probated." *Id*. at 751.

Although this suggests that the probate court may no longer have had custody of the assets, the important take away from *Wisecarver* is that the nature of the remedies sought is what implicates the probate exception. *Id*. at 750-51; *see also Osborn*, 865 F.3d at 434 (discussing *Wisecarver*). There, the probate exception to federal jurisdiction applied only to those claims that: sought to recover damages in the amount of the improperly disbursed assets; to enjoin the disposition of assets received from the estate; to order divestment and transfer of all remaining assets received from the estate; and to declare the probated will invalid and the defendants ineligible beneficiaries. *Wisecarver*, 489 F.3d at 751. For that reason, the *remedies* sought would have required the federal court undo the probate court's disposition of those assets.

The district court's analogy to *Wisecarver* was not without basis to the extent that AEP sought either a lien against settlement funds in the possession of the Administrator or a reallocation of the settlement proceeds from wrongful death claims to survival claims. Perhaps recognizing as much, AEP abandons such claims on appeal. The analogy does not hold, however, with respect to AEP's assertion of an equitable lien by agreement against any wrongful death proceeds in the

possession or control of Glori Fitch. That is an *in rem* claim, which arises only against identifiable funds that are not in the custody or control of the probate court. Nor would the remedy of an equitable lien involve disturbing the probate court's allocation or distribution of those funds. The probate exception should be no impediment to the federal court's exercise of jurisdiction over that claim. That would leave unresolved Glori Fitch's contention on the merits that her wrongful death recovery is not subject to the reimbursement provisions of the AEP Plan because it is a recovery for her *own* injuries from the death of her son.

Because I would reverse the dismissal of AEP's remaining claim and remand for further proceedings, I respectfully dissent.