NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0091n.06

No. 24-1653

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: SETTLEMENT FACILITY DOW CORNING TRUST. | ) | |
| _____ | ) | **FILED** |
| | ) | Feb 13, 2025 |
| KOREAN CLAIMANTS, | ) | KELLY L. STEPHENS, Clerk |
|     Interested Parties-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
|     v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DOW SILICONES CORP., et al., | ) | |
|     Interested Parties-Appellees. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

PER CURIAM. For over two decades, Dow Corning Corporation served as the leading American manufacturer of silicone gel breast implants. The company came under scrutiny when the Food and Drug Administration sharply restricted the use of such implants, given their potential link to various auto-immune diseases. Hundreds of thousands of potentially affected implant recipients sued Dow soon thereafter, driving the company to file for reorganization under Chapter 11 of the Bankruptcy Code in 1995.

Three decades later, litigation from that bankruptcy persists. In this installment, the self-described Korean Claimants, a group of South Korean residents who opted to settle their claims with Dow, moved to challenge both the denial of certain claims as well as the terms of three closing orders issued by the district court to resolve the bankruptcy process. The district court denied those motions, and we affirm.

I.

The Korean Claimants begin by challenging an administrator's ruling that they failed to timely cure deficiencies in their claims for payment, which resulted in the Claimants not receiving sums that they believed were owed. By way of background, the Korean Claimants, in keeping with the court-approved process for resolving disease claims, submitted claim forms to the Settlement Facility—a fund established to resolve such claims. The forms instructed claimants to select among compensable conditions and attach supporting documentation. The Claims Administrator, the individual assigned to "oversee the processing and payment of Claims by the Settlement Facility," R. 1701-2, PageID#32830, denied 109 of the Korean Claimants' submissions due to various deficiencies, including inadequate medical records. The Settlement Facility accordingly sent denial letters to each affected claimant. The letters indicated that, consistent with the settlement agreement's terms, the claimants had one year to cure any identified deficiencies. None of the 109 Korean Claimants did so.

Several years later, the Korean Claimants requested an extension of those deadlines from the Claims Administrator to submit further documentation. The Claims Administrator denied the request, noting that the original deadlines had long passed. The settlement agreement established an Appeals Judge, the individual assigned to review the Claims Administrator's rulings. When the Korean Claimants appealed the denial of their request for a deadline extension, the Appeals Judge affirmed that determination.

The Korean Claimants then turned to federal court, where they moved to overturn the denials. The district court denied their motion. As the district court saw things, it "ha[d] no authority to review substantive decisions regarding particular claims." *In re Settlement Facility - Dow Corning Tr.*, No. 00-00005, 2024 WL 5041114, at *2 (E.D. Mich. July 31, 2024).

We agree. To see why, walk through the documents governing the Korean Claimants' rights in the Dow bankruptcy, starting with the confirmed bankruptcy plan. As a general rule, a confirmed plan "bind[s]" the debtor and any creditor. 11 U.S.C. § 1141(a). The Dow plan, as noted, established a Claims Administrator to "oversee the processing and payment of Claims by the Settlement Facility." R. 1701-2, PageID#32830. The settlement agreement—one of the reorganization plan's key documents—does authorize a claimant to appeal a ruling of the Claims Administrator to an Appeals Judge. But the Judge's substantive decisions as to individual claims, the agreement makes clear, are "final and binding." R. 1701-3, PageID#32988, 32953. The agreement, we note, provides no right to appeal those decisions in federal court. As a result, "[t]o the extent the Korean Claimants seek to challenge" in this forum "any substantive decisions of the Claims Administrator with respect to any particular claims, such review is beyond the scope of the plan." *In re Settlement Facility Dow Corning Tr.*, 760 F. App'x 406, 411–12 (6th Cir. 2019).

The Korean Claimants see things differently. In their mind, they are not appealing the Appeals Judge's substantive decisions, but instead her interpretation of what they appear to portray as a semi-procedural clause in the settlement agreement stating that "[t]he Appeals Judge shall apply the guidelines and protocols" therein. R. 1701-3, PageID#32988. And, the Korean Claimants add, the Judge violated this clause by failing to enforce the Claims Administrator's duty to "assure consistency" and "ensure fairness" when processing claims. *Id.*, PageID#32974.

True, "[c]ertain parties under certain circumstances can seek review of decisions" in federal court "regarding the interpretation and implementation of the [reorganization] [p]lan." *In re Settlement Facility Dow Corning Tr.*, 760 F. App'x at 412 (quotations and citations omitted). But that caveat does not apply here, for multiple reasons. One, the Korean Claimants are not among the "[c]ertain parties" authorized to appeal to district court. That right extends only to specific

representatives of the debtor and creditors, as well as the Claims Administrator. *See In re Settlement Facility Dow Corning Tr.*, No. 00-00005, 2017 WL 7660597, at *1 (E.D. Mich. Dec. 28, 2017) ("There is no provision under the [reorganization plan] or the [settlement agreement] which allows a claimant to submit an issue to be interpreted by the Court or to amend the [reorganization plan]."). Two, this case is not among the "certain circumstances" eligible for appeal. In general, those circumstances include disputes over the "interpretation of substantive eligibility criteria and the designation of categories of deficiencies." R. 1707-3, PageID#33187. Here, the Korean Claimants, at bottom, are appealing individualized decisions by the Claims Administrator and Appeals Judge regarding deficiencies in their claim forms. The settlement agreement renders those decisions unreviewable.

Alternatively, the Korean Claimants package their claims as a denial of due process. Multiple flaws plague this theory too. As an initial matter, the Korean Claimants forfeited this argument by failing to raise it before the district court. *See Sheet Metal Workers' Health & Welfare Fund of N.C. v. Law Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021). Regardless, no due process violation occurred. In their claim forms, each of the 109 claimants checked a box that stated, "I am making a claim for a Disease Payment. I have obtained all of the medical records and documents required to support my claim, and I am ready to have my disease claim evaluated." R. 1756-1, PageID#34650. Consistent with that affirmation, the Claims Administrator evaluated their claims, identified their noncompliance with terms of the settlement agreement, and notified them of their denial. The Korean Claimants had a year to cure those deficiencies. And they received expedited release payments after that year passed. (The Korean Claimants returned those checks uncashed, however.) Through it all, they enjoyed the right to appeal the rulings of the Claims Administrator to the Appeals Judge. Due process does not demand

more. *See, e.g.*, *Bank of Marin v. England*, 385 U.S. 99, 102 (1966) (explaining, in the context of a bankruptcy, that "[t]he kind of notice required is one 'reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action'" (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950))).

## II.

The Korean Claimants next challenge three closing orders the district court issued to wind down the payment process. The first is Closing Order 2. It provides that the Settlement Facility "shall not issue payments to or for claimants" until it receives "a confirmed, current address for such claimant." R. 1482, PageID#24089. The second, Closing Order 3, directs the Settlement Facility to permanently close a subset of claims as "abandoned" if the respective claimants failed to give a "confirmed current address" in the next quarter. R. 1598, PageID#28287. The third is Closing Order 5. It similarly directs the Settlement Facility to publish a list of claimants with "bad address[es]" and permanently close unresolved claims after 90 days. R. 1642, PageID#28803–04. The Korean Claimants moved to challenge the three orders on both notice and discriminatory application grounds.

Problems with this motion abound. Start with the fact that the Korean Claimants neither timely objected to nor appealed any of the three closing orders when they were originally issued. *See In re Settlement Facility Dow Corning Tr.*, No. 21-2665, 2023 WL 2155056, at *3 (6th Cir. Feb. 22, 2023); *In re Settlement Facility - Dow Corning Tr.*, 2024 WL 5041114, at *4; *Korean Claimants v. Dow Silicones Corp.*, No. 22-1753, 2022 U.S. App. LEXIS 25779, at *3 (6th Cir. Sept. 14, 2022) (order). Next, as to Closing Order 2 in particular, we have already blessed the Order's address conditions. *See In re Settlement Facility Dow Corning Tr.*, 2023 WL 2155056, at

*3. Understandably, "that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

The Korean Claimants' arguments likewise fail on their merits. Beginning with notice, the Korean Claimants plainly were made aware of the status of the various orders. Based on the terms of the reorganization plan, the Korean Claimants knew the district court "retain[ed] exclusive jurisdiction . . . to enter orders in aid of th[e] [p]lan." R. 1701-2, PageID#32896–97. They also knew, based on the text of Closing Order 2, that they were "required to keep their address and contact information current with the [Settlement Facility]." R. 1482, PageID#24088. The Korean Claimants concede that they received notice via the district court's electronic docket at the time the orders were filed. And each order was entered by agreement of the Debtor's Representatives and Claimants' Advisory Committee—the latter of whom represents the interests of all personal injury claimants, including the Korean Claimants.

Nor does the record support the Korean Claimants' allegations of discrimination. The address verification procedures applied equally to all claimants, and the Settlement Facility has distributed address verification letters to every claimant with an unconfirmed address. The Settlement Facility, we note, did exercise its discretion under Closing Order 2 to require the Korean Claimants to confirm their addresses directly, even though other claimants could confirm their addresses through the submissions of their counsel. But the Settlement Facility imposed that mandate only after (1) hundreds of letters to the Korean Claimants had been returned as undeliverable, and (2) their counsel repeatedly refused to cooperate with attempts to confirm his clients' address information. The Settlement Facility, it bears noting, uniformly applied that same mandate to other claimants whenever "more than a negligible percentage of mail sent to addresses

provided by counsel ha[d] been returned as undeliverable." R. 1595-6, PageID#28168. In the end, the Korean Claimants received the same treatment as any other similarly positioned claimant.

*   *   *   *   *

We affirm the district court's order.